UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
~~EASTERN~~ DIVISION
*Northern*

RECEIVED

2006 AUG 24  P 2: 49

CIVIL ACTION NO.

2:06CV763

| | |
|---|---|
| ERNEST REED, JIMMY ADAIR, FREDDIE BOWDRY, MARTHA BRAY, CYNTHIA BROOKS, WILLIAM BUCKNER, OZELLA CLARK, CAROLYN CUNNINGHAM, SAMMIE FLOYD, WILLIE FORD, VIRGINIA GARVER, ANNA GREEN, PRICE HARPER, ROZELL HARRIS, SHARON HATFIELD, WILLIAM HOWARD, WILLIE JAMES, LUCIUS LAWSON, BERTHA LYAS, DENNIS MARCHMAN, FREDDIE MICKELL, LOUIS MOSBY, BRENDA PASQUALE, ROBERT ROMAN, CHARLES SIKES, JR., JAMES STEPHENS, KEVIN STRICKLAND, ERNEST TUCKER, FLORENCE TUESNO, GAYLON WISE, ROBERT WOMACK, DONNIE LUALLEN, CAROLYN ARGO, GEORGIA WELLS, CONNIE DILLARD, MARY JACKSON, EARNESTINE TASWELL, ELVIN FEDRICK, STEVEN TURNER, OTIS GIBSON, MARY BROOKS, ALENE DODD, and HERMAN STRINGER,<br><br>Plaintiffs,<br><br>v.<br><br>GUIDANT CORPORATION, a corporation, and GUIDANT SALES CORPORATION, a corporation,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEMAND FOR JURY TRIAL**

## COMPLAINT

This is a civil action brought on behalf of the above-styled Plaintiffs, who were

the recipients of medical devices, such as pacemakers and implantable defibrillators

including the models implanted in the Plaintiffs, manufactured and distributed by Guidant



SCANNED

suffer personal injury and damages. This action seeks monetary damages for injuries

caused by, and damages caused by, medical devices such as pacemakers and implantable

defibrillators manufactured and distributed by Guidant Corporation and Guidant Sales

Corporation.

## PARTIES AND JURISDICTION

1.      The lead Plaintiff, Ernest Reed, is an adult individual, a citizen of the State

of Alabama, and resides at 322 Brent Boulevard, Jemison, Alabama 35085, in Chilton,

County, Alabama.

2.      This class action is brought by the Plaintiff and putative class members to

secure redress for an unlawful and negligent practice engaged in by the Defendants

Guidant Corporation and Guidant Sales Corporation (hereinafter collectively referred to

as "Guidant" or "Defendant"), which are Indiana corporations with their principal place

of business located in Indianapolis, Indiana. Guidant designs, manufactures, tests,

markets, distributes, promotes and sells electronic medical devices such as pacemakers

and implantable defibrillators including the models implanted in the Plaintiffs and

putative class members.

3.      Plaintiff brings this action on behalf of himself and a class of similarly

situated persons who have Guidant Defibrillators/Pacemakers of any description which

are subject to recall and or which are defective. The class consists of any person and/or

entity who or which was or are residents of the state of Alabama, and or other states in

the United States and who at any date proceeding the filing of this lawsuit the Defendants

provided to either directly or indirectly a defective Defibrillator and or /Pacemakers of

any description manufactured by Guidant it's predecessors corporation and or successor corporation.

4.    At all times herein mentioned, Guidant conducted business in the State of Alabama, and within this judicial district.  At all times relevant to this action, Guidant engaged in interstate commerce in this judicial district, by designing, manufacturing, testing, analyzing, distributing, recommending, merchandising, advertising, promoting, supplying and selling to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, certain medical devices known as "cardiac rhythm devices," including (1) pacemakers, (2) implantable cardioverter Defibrillators/Pacemakers (ICDs), (3) cardiac resynchronization therapy (CRT-P) devices, and (4) cardiac resynchronization therapy with defibrillation (CRT-D) devices.

5.    The individuals identified in Exhibit A join in this action as Plaintiffs and putative class members, pursuant to § 6-3-7 of the Code of Alabama, and are individuals over the age of nineteen (19) years and are residents of the States of Alabama, Georgia, and Mississippi.

6.    Plaintiff, Earnest Reed, and each Plaintiff identified in Exhibit A, and the putative class members to this Complaint, was injured and sustained damages as alleged herein, as a direct and proximate result of the conduct of the Defendants alleged herein.

7.    Diversity jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8.    Venue is proper in the Middle District of Alabama because the Defendant is a corporation that is subject to personal jurisdiction in the Middle District.  In addition,

the events and omissions giving rise to the claims occurred primarily in the Middle
District.

9.     Personal jurisdiction and subject matter jurisdiction is appropriate in the
Eastern Division of the Middle District because the Plaintiff resides in the Eastern
Division and Defendant has done and continues to do business in the Eastern Division,
either directly or by agent, and have thus availed themselves of this jurisdiction.

10.    Some of the Plaintiff's claims accrued in whole or in part in the Eastern
Division and the Plaintiff resides in Chilton County, Alabama.  The Defendant has been
and/or is currently engaged in business, directly or by authorized agent, in Chilton
County, Alabama. Venue and jurisdiction are therefore proper.  The claims of the
Plaintiff herein satisfy the jurisdictional amount of this Court.

## CLASS ACTION ALLEGATIONS

11.    This action conforms to the Alabama and Federal Rules of Civil Procedure
with respect to the requirements for a class action as follows:

a.     The class is so numerous that joinder of all members is impractical.

b.     The class includes thousands of persons.

c.     There are questions of law and fact common to the class, which
predominate over any questions affecting only individual class members.
These questions include:

1.     Whether the above-described class of have been injured
and damaged by the design and manufacture of the medical
devices described herein

4

2.      Whether the defendants' above-described manufactured a
medical device that when used for it's intended purpose was an
unreasonable dangerous for use by the plaintiff and    class of
individuals similarly situated.

3.      Whether the defendants' below described conduct
constitutes breach of contract.

4.      Whether the below described conduct of the defendants
constitutes collusion and conspiracy by the defendants.

12.    The Defendants have acted uniformly with respect to the entire class.

13.    Plaintiff will fairly and adequately protect the interests of the class and has
retained counsel experienced in handling class actions of the nature described herein
including industry wide negligent and wanton conduct. Neither Plaintiff nor his counsel
has any interest that might cause them not to vigorously pursue this action. Plaintiff's
claims are typical of the claims of the class, which all arise from the same operative facts
and are based on the same legal theories.

14.    A class action is an appropriate method for the fair and efficient
adjudication of this controversy. The interest of class members in individually
controlling the prosecution of separate actions against the defendants' organizations is
substantially deterred because   the class members have suffered nominal damages,
making it unfeasible for them to bring individual actions. The nature of the practice
complained of is such as to make a class action essential because although each
member's individual damages are nominal, said practice resulted in large profits to the

defendants. Management of this class action is likely to present significantly fewer difficulties than those present in many individual lawsuits.

## TOLLING OF LIMITATIONS

15.     Any statute of limitations otherwise applicable to the matters complained of herein has been tolled by virtue of:

    a.    The continuation of the unlawful conduct for a period of time unknown to the Plaintiffs and putative class members; and

    b.    The inability of class members to discover the wrong.

## COUNT I
## FACTUAL ALLEGATIONS

16.     Defendant Guidant designs, develops, manufactures, distributes and markets various medical devices and other products used in the treatment of heart disease, heart failure, and peripheral vascular diseases.

17.     Among Guidant's products are four types of "cardiac rhythm devices," including (1) pacemakers, (2) implantable cardioverter Defibrillators/Pacemakers (ICDs), (3) cardiac resynchronization therapy (CRT-P) devices, and (4) cardiac resynchronization therapy with defibrillation (CRT-D) devices. Guidant sells several models of each type of cardiac rhythm device, which shall, unless otherwise noted, be referred to collectively as "Defibrillators/Pacemakers/Pacemakers."

18.     All of Defendant's Defibrillators/Pacemakers/Pacemakers are designed to be inserted under the skin, and connected to the heart with wires called "leads." The leads are in turn connected to the Defibrillators/Pacemakers/Pacemakers.

19.     Implanted Defibrillators/Pacemakers have been one of the most popular

and fastest growing types of medical devices in recent years. In 2005 alone, over 200,000 patients received such Defibrillators/Pacemakers. Guidant has sold its Defibrillators/Pacemakers for as much as $29,000 apiece.

20.    Defibrillators/Pacemakers/Pacemakers have been Guidant's fastest growing product for at least the past three years. Between 2002 and 2004, Guidant's revenues from these Defibrillator sales rose by more than 80 percent, from $499.2 million to $1.786 billion.

21.    In its public disclosures, Guidant has represented that its Defibrillators/Pacemakers/Pacemakers are essential for saving lives. For example, Guidant's 2002 Annual Report describes them as "Lifesaving Therapy for Sudden Cardiac Death (SCD)."

22.    Guidant's 2003 Annual Report boasts that, "superior engineering spurred the launch of a new implantable Defibrillator/Pacemaker in every quarter of the past year."

23.    Guidant has described its manufacturing facilities as "exceptional." Guidant's 2003 Annual Report emphasized that it has "an unrelenting focus on quality in everything" it does. Indeed, Guidant acknowledges that: "Quality is essential; lives depend on us."

24.    Guidant has also publicly claimed to be an open provider of information to patients and physicians. Its 2003 Annual Report stated "information for patients, physicians and the public is available around the clock through Guidant's dedicated customer and technical service representatives, as well as its comprehensive web site (www.guidant.com)."

25.    The United States Food and Drug Administration ("FDA") has approved various implantable Defibrillators/Pacemakers/Pacemakers designed, manufactured, and supplied by Defendants.

26.    At some point prior to April, 2002 and during periods of time thereafter, Guidant learned that certain of its Defibrillators/Pacemakers/Pacemakers were defective and may not deliver the needed shocks to the heart of the recipient. Stated another way, the defect rendered the Defibrillators/Pacemakers useless just when their recipients needed them to work most.

27.    In April, 2002, Guidant changed the design of the Ventak Prizm Defibrillator in an effort to correct the flaw, and began to produce new Ventak Prizm Defibrillators/Pacemakers with the modified design. In November, 2002, Guidant made a second design change to the Ventak Prizm Defibrillator, this time adding extra insulation around the component it had modified in April, 2002.

28.    Guidant did not inform the FDA of its design change until August, 2003, when it disclosed the changes as part of its annual report to the FDA.

29.    Guidant made no disclosure of these changes to patients or doctors and, continued to sell the Defibrillators/Pacemakers that it had produced prior to its discovery of the defective design.

30.    In a filing made with the FDA, Guidant notified the agency of design changes made to the Contak Renewal and Renewal 2 in August, 2004, to correct a short-circuiting problem in the Renewal models.

31.    It has been reported that, as with the Ventak Prizm, Guidant continued to sell Renewal devices produced prior to the corrective design change well after making

the corrective design changes to the Renewal models.

32.    As with the Ventak Prizm, Guidant did not inform doctors or patients of the design changes made to the Contak Renewal models at the time they were made, or even at the time that Guidant informed the FDA of the changes.

33.    Despite its knowledge no later than April, 2002, of the flaws in the design of its Defibrillators/Pacemakers, and of multiple reports of Defibrillator failures since that time, including the death of at least one recipient, it was not until three years later that Defendant first alerted doctors or patients of the defects in its Defibrillators/Pacemakers. In May, 2005, after being notified by the New York Times of the newspaper's intention to publish an article regarding the flaws in Guidant Defibrillators/Pacemakers, Guidant initiated contact with physicians regarding short circuits in Guidant Defibrillators/Pacemakers - one day prior to publication of the Times article.

34.    According to a May 25, 2005 Press Release issued by Guidant (the "May 25 Press Release), a letter was sent on May 23, 2005 from Guidant to physicians, which identified 26 reports of Defibrillator failures, including one death. The May 25 Press Release (the actual letter sent to physicians is unavailable from Guidant's website) further states that the letter "describes a rare failure that results in the device's inability to deliver therapy."

35.    The May 25 Press Release further states that the "problem is in Guidant's VENTAK PRIZM 2 DR implantable Defibrillators/Pacemakers manufactured prior to November 2002," Devices manufactured after this date are not affected." Defendant did not state in the May 25 Press Release that Guidant had continued to sell Defibrillators/Pacemakers with the "problem" well after April, 2002.

9

36.    On June 3, 2005, the FDA announced that it was evaluating Guidant's handling of its Ventak Prizm Defibrillators/Pacemakers, including the company's continued distribution of potentially flawed devices after it made a manufacturing change.

37.    On June 17, 2005, at the behest of the FDA, Guidant issued a recall of the following Defibrillators/Pacemakers made by Guidant: (1) the Contak Renewal, Model H135, as well as (2) the Contak Renewal 2, Model 155, and (3) the Ventak Prizm 2 DR Model 1861.

38.    The June 17, 2005 recall was the first time Guidant had acknowledged any flaws with the Contak Renewal or Renewal 2 devices.

39.    Unlike the recall on Ventak Prizm Defibrillators/Pacemakers, which extended only to devices manufactured before April, 2002, the recall on Contak Renewal and Contak Renewal 2 devices extended to all devices manufactured up to August 26, 2004.

40.    On or about June 24, 2005, issued yet another recall for still more defibrillator models, including the Contak Renewal 3 and 4, Renewal 3 and 4 A VT, and Renewal RF implantable cardioverters.

41.    On July 1, 2005, the F.D.A. designated the Contak Renewal, Renewal 2 and Ventak Prizm recalls as "Class I" recalls. According to the FDA, "Class I recalls are the most serious type of recall and involve situations in which there is a reasonable probability that use of the product will cause serious injury or death." On that same date, the FDA also designated eight other models of Guidant Defibrillators/Pacemakers and pacemakers as "Class II" recalls, which pose a somewhat lessened but still serious risk.

42.     On or around July 22, 2005, Guidant notified physicians that a programming change that it had suggested to doctors in June, 2005, might "significantly increase" the risk that a magnetic switch in the Contak Renewal, Ventak Prizm and Vitality devices would become stuck and prevent them from providing treatment.

43.     On September 22, 2005, the chairman of the U.S. Senate Finance Committee notified Guidant that his committee was investigating whether the company had violated a 2003 agreement that required it to alert the government to product problems. (In June 2003, Guidant's wholly owned subsidiary, Endovascular Technologies, had pleaded guilty to federal criminal charges of failing to notify the FDA about device malfunctions and patient deaths related to stints for aortic aneurysms. As part of its plea, Guidant paid $92.4 million to settle civil and criminal charges, and signed an agreement pledging, among other things, to notify the government about product-related problems.)

44.     On September 29, 2005, the New York Times reported that two former employees of Guidant had been contacted and interviewed by criminal investigators connected with the FDA.

45.     In June, 2006, Guidant announced another recall of Defibrillators/Pacemakers/Pacemaker, which numbered in the range of 23,000.

46.     Guidant has recalled the following Defibrillators/Pacemakers/Pacemaker, one or more of which are or have been implanted in the captioned Plaintiffs and putative class members including the putative class members:

      a.     Exhibit Prizm 2 DR model 1861

      b.     Contak Renewal model H135

c.    Contak Renewal 2 model H155

d.    Ventak Prizm AVT

e.    Vitality AVT

f.    Renewal 3 AVT

g.    Renewal 4 AVT ICD's

h.    PULSAR® MAX Models 1170, 1171, 1270

i.    PULSAR Models 0470, 0870, 0970, 0972, 1172, 1272

j.    DISCOVERY® Models 1174, 1175, 1273, 1274, 1275

k.    MERIDIAN® Models 0476, 0976, 1176, 1276

l.    PULSAR MAX II Models 1180, 1181, 1280

m.    DISCOVERY II Models 0481, 0981, 1184, 1186, 1187, 1283, 1284, 1285, 1286

n.    CONTAK TR® Model 1241

o.    VIRTUS PLUS® II* Models 1380, 1480

p.    INTELIS II Models 1483, 1484, 1485, 1384, 1385, 1349, 1499

## COUNT II
## STRICT LIABILITY - FAILURE TO WARN

47.    The Plaintiffs and putative class members hereby incorporate by reference, as if fully set forth herein, each and every count, paragraph, and allegation of this Complaint.

48.    Defendants Guidant and Guidant Sales were and are engaged in the business of designing, developing, manufacturing, marketing, and selling implantable Defibrillators/Pacemakers for ultimate use by and implantation in the bodies of heart

disease patients, including the Plaintiffs. The Defendants designed, developed,
manufactured and sold Defibrillators/Pacemakers to hospitals and physicians, knowing
that they would thereby be sold to and implanted in heart disease patients, including the
Plaintiffs and putative class members. As such, the Defendants are guarantors of the
safety of their Defibrillators/Pacemakers, including those implanted in the Plaintiffs and
putative class members.

49.    The Defendants knew that the aforesaid product was to be used by the user
without inspection for defects therein

50.    The Defendants' Defibrillators/Pacemakers were expected to and did
reach the Plaintiffs and putative class members without substantial change in their
condition as manufactured and sold by the Defendants.

51.    The Plaintiffs and putative class members used the product for its intended
purpose.

52.    The aforesaid products were unaccompanied by proper warnings of their
dangerous propensities that were known or reasonably scientifically knowable at the time
of distribution. The reasonably foreseeable use of the product, i.e., implantation for use
as a "cardiac rhythm device", involved substantial dangers not readily recognizable by
the ordinary user of the product. The Defendants failed to warn of the known or
knowable likelihood of injury including but not limited to the likelihood of short-
circuiting, malfunction, and/or failure.

53.    The Defendants failed to warn of the possibility of short-circuiting or
other malfunction of its Defibrillators/Pacemakers, and failed to disclose the existence of
such failures, despite its knowledge of reports of such malfunctions.

54.    Defibrillators/Pacemakers manufactured by Guidant that were implanted in the Plaintiffs and putative class members were defective and unreasonably dangerous when implanted due to the possibility of a cardiac failure resulting from short-circuit or other defect.

55.    Due to the failures described above, the defibrillator(s) implanted in the Plaintiffs and putative class members were in a defective condition, unreasonably dangerous in that they were and are unsafe for their intended use, and were lacking elements necessary to make them safe for their intended use.

56.    As a direct and/or proximate result of the Defendants' failure to warn of this serious risk, the Plaintiffs and putative class members including the putative class have suffered damages.

WHEREFORE, each Plaintiff respectfully request this Court enter judgment in his or her favor and against the Defendant for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for equitable relief and restitution; for attorneys' fees, expenses, and costs herein incurred; for interest accrued from the date of filing; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## COUNT III
## STRICT LIABILITY - DESIGN & MANUFACTURING DEFECTS

57.    The Plaintiffs and putative class members hereby incorporate by reference, as if fully set forth herein, each and every count, paragraph, and allegation of this Complaint.

58.     Defendants Guidant and Guidant Sales were and are engaged in the business of designing, developing, manufacturing, marketing, and selling implantable Defibrillators/Pacemakers for ultimate use by and implantation in the bodies of heart disease patients, including the named Plaintiffs and putative class members and the putative class members. As such, Defendants are guarantors of the safety of those products.

59.     As described above, the Guidant Defibrillators/Pacemakers implanted in the Plaintiffs and putative class members and putative class members were defective in design.

60.     Alternatively, or additionally, the Guidant Defibrillator(s) implanted in the Plaintiffs and putative class members were produced with a manufacturing defect.

61.     As a result of Defendants' defective design and/or manufacturing defect, the Guidant Defibrillators/Pacemakers were in a defective condition, unreasonably dangerous to the Plaintiffs and putative class members at the time Defendant sold them, and at the time they were implanted and used for their intended purposes.

62.     When they manufactured and sold Guidant Defibrillators/Pacemakers, Defendants were aware of the purpose and manner of their use. Defendants knew that the products would reach consumers without substantial and/or significant change in the condition, which Defendants sold them, and the Guidant Defibrillators/Pacemakers in fact reached consumers without substantial and/or significant change in condition.

63.     Defibrillators/Pacemakers manufactured by the Defendants that were implanted in the Plaintiffs and putative class members were defective and unreasonably dangerous when implanted, due to the possibility of a cardiac failure resulting from short-

circuit or other defect.

64.     Due to the failures described above, the defibrillator(s) implanted in the Plaintiffs and putative class members were in a defective condition, unreasonably dangerous in that they were and are unsafe for their intended use, and were lacking every element necessary to make them safe for their intended use.

65.     As a result of Defendants' defective design of the Guidant Defibrillators/Pacemakers, the Plaintiffs and putative class members have suffered damages. Specifically, as a result of having Guidant's defective Defibrillators/Pacemakers implanted, explanted, and/or exchanged and re-implanted, the Plaintiffs and putative class members have suffered and will continue to suffer severe physical illness and injuries; past, present, and future pain and suffering; past, present, and future mental anguish and emotional distress; permanent disfigurement and disability; past, present, and future medical and drug expenses; the hardship of recovering from those injuries; and a significantly increased risk of death or further illness and injury.

WHEREFORE, each Plaintiff and putative class members respectfully requests this Court enter judgment in his or her favor and against the Defendants for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for attorneys' fees, expenses, and costs herein incurred; for interest accrued from the date of filing; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## COUNT IV
## NEGLIGENCE

66.     The Plaintiffs and putative class members hereby incorporate by reference, as if fully set forth herein, each and every count, paragraph, and allegation of this

Complaint.

67.    Defendants Guidant and/or Guidant Sales are the designers, manufactures, sellers, and suppliers of the implantable cardiac devices implanted in the Plaintiffs and putative class members.

68.    As such, the Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of its Defibrillators/Pacemakers, including a duty to assure that the devices did not short-circuit causing defibrillator recipients to suffer a risk of serious injury or death, and a duty to warn of known defects that may lead to such injury or risk of harm.

69.    The Defendants breached their duty by failing to provide any meaningful warnings regarding the risk of injury or death associated with the Defibrillators/Pacemakers. Any warnings given by the Defendants were silent as to the risk of short-circuit of Defibrillators/Pacemakers implanted in the Plaintiffs and putative class members, even after the Defendants were aware of the tendency of the Defibrillators/Pacemakers to short-circuit or otherwise malfunction, and had taken steps to correct the defect in the devices to prevent such short-circuits.

70.    As such the Defendants were negligent in the design, manufacture, testing, advertising, marketing, promotion, labeling, failure to warn, and sale of their Defibrillators/Pacemakers.

71.    The Defendant knew or should have known that heart patients such as the Plaintiffs and putative class members would foreseeably suffer injuries as a result of Defendants' failure to exercise ordinary care as described above.

72.    As the direct and proximate cause of Defendants' failure to provide appropriate warnings for the Defibrillators/Pacemakers, and as a result of the negligence, carelessness, other wrongdoing and actions or omissions of the Defendants, the Plaintiffs and putative class members had the Defibrillators/Pacemakers implanted, explanted, and/or exchanged and re-implanted, causing the Plaintiffs and putative class members to suffer and to continue to suffer severe physical illness and injuries; past, present, and future pain and suffering; past, present, and future mental anguish and emotional distress; permanent disfigurement and disability; past, present, and future medical and drug expenses; the hardship of recovering from those injuries; and a significantly increased risk of death or further illness and injury.

WHEREFORE, each Plaintiff respectfully requests this Court enter judgment in his or her favor and against the Defendants for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for attorneys' fees, expenses, and costs herein incurred; for interest accrued from the date of filing; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## COUNT V
## BREACH OF IMPLIED WARRANTIES

73.    The Plaintiffs and putative class members hereby incorporate by reference, as if fully set forth herein, each and every count, paragraph, and allegation of this Complaint.

74.    The Defendants are engaged in the business of designing, developing, manufacturing, marketing, and selling implantable Defibrillators/Pacemakers for ultimate use by and implantation in the bodies of heart disease patients, including Plaintiffs, by

and through physicians, hospitals, and other health-care related organizations.

75.    As such, the Defendants are merchants of Defibrillators/Pacemakers.

76.    By placing Guidant Defibrillators/Pacemakers into the stream of commerce, the Defendants impliedly warranted that the Guidant Defibrillators/Pacemakers placed into the stream of commerce and implanted in the Plaintiffs and putative class members were merchantable and fit and safe for their intended use.

77.    The Guidant Defibrillators/Pacemakers placed into the stream of commerce by the Defendants that ultimately were implanted into the Plaintiffs and putative class members were defective in that they short-circuit and fail in their essential purpose, and are thus neither merchantable nor fit and/or safe for their ordinary or intended uses.

78.    The Guidant Defibrillators/Pacemakers placed into the stream of commerce by the Defendants that ultimately were implanted into the Plaintiffs and putative class members were also inadequately contained, packaged, and labeled, in that the Defendants misrepresented and/or omitted material facts regarding the safety, reliability and efficacy of the Guidant devices, and thus were neither merchantable nor fit and/or safe for their ordinary or intended uses.

79.    The defects in the affected Guidant Defibrillators/Pacemakers designed, manufactured and/or supplied and/or placed into the stream of commerce by the Defendants, were present at the time the products left the hands of the Defendants.

80.    The Defendants thus breached the implied warranty of merchantability for the Guidant Defibrillators/Pacemakers.

81.     The Plaintiffs and putative class members were foreseeable users of the affected Guidant Devices, and as a direct and proximate result of Defendants' breach of implied warranties, the Plaintiffs and putative class members have suffered and will suffer severe injuries described above, for which the Defendants are liable. As a proximate result of the actionable wrongful conduct of the Defendants, the Plaintiffs and putative class members have suffered damages. Specifically, as a result of having Guidant's defective Defibrillators/Pacemakers implanted, explanted, and/or exchanged and re-implanted, the Plaintiffs and putative class members have suffered and will continue to suffer severe physical illness and injuries; past, present, and future pain and suffering; past, present, and future mental anguish and emotional distress; permanent disfigurement and disability; past, present, and future medical and drug expenses; the hardship of recovering from those injuries; and a significantly increased risk of death or further illness and injury.

82.     The spouses of the Plaintiffs and putative class members have suffered a loss of consortium, loss of society, services, companionship, and economic loss.

WHEREFORE, each Plaintiff respectfully requests this Court enter judgment in his or her favor and against the Defendants for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for equitable relief and restitution; for attorneys' fees, expenses, and costs herein incurred; for interest accrued from the date of filing; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

83.     The Plaintiffs and putative class members hereby incorporate by reference,

as if fully set forth herein, each and every count, paragraph, and allegation of this Complaint.

84.    Because Guidant deals in goods of the kind purchased by and/or implanted in the Plaintiffs and putative class members, i.e., Guidant Defibrillators/Pacemakers, the Defendants, are "merchants" and "sellers", as contemplated the UCC and applicable state laws and regulations, in that they sell or contract to sell goods.

85.    The Defibrillators/Pacemakers sold by the Defendants are "goods" under the UCC and applicable state laws and regulations.

86.    The Plaintiffs and putative class members are "buyers" in that they contracted for, purchased, and/or had implanted in their bodies, goods manufactured by the Defendants, and were the beneficiary of all express warranties attached to such goods.

87.    The Defendants expressly warranted to the Plaintiffs and putative class members and their physicians that, among other things, the Guidant Defibrillators/Pacemakers designed, manufactured, and supplied by the Defendants to the Plaintiffs were fit and safe for their intended purpose - saving lives - and otherwise not injurious to the health and well being of the Plaintiffs and putative class members.

88.    As detailed above, the Guidant Devices implanted in the Plaintiffs and putative class members failed in their essential purpose, and thus were unsafe, unmerchantable, unfit for use in the body, and otherwise injurious to the Plaintiffs and putative class members.

89.    The Defendants breached express warranties of merchantability in the sales of affected Guidant Devices to the Plaintiffs and putative class members in that their Defibrillators/Pacemakers either manifested a failure, and/or were defective and thus not

fit for their ordinary purposes.

90.    As a direct and proximate result of Defendants' breach of their express warranties as described herein, the Plaintiffs and putative class members did in fact suffer and will continue to suffer severe physical injuries as set forth above.

91.    Since the essential purpose of the warranty has failed, the Plaintiffs and putative class members are entitled to incidental and consequential damages, as appropriate, under the UCC and applicable state laws and regulations.

92.    The Plaintiffs and putative class members have suffered and will suffer severe injuries described above, for which the Defendants are liable. As a proximate result of the actionable wrongful conduct of the Defendants, the Plaintiffs and putative class members have suffered damages. Specifically, as a result of having Guidant's defective Defibrillators/Pacemakers implanted, explanted, and/or exchanged and re-implanted, the Plaintiffs and putative class members have suffered and will continue to suffer severe physical illness and injuries; past, present, and future pain and suffering; past, present, and future mental anguish and emotional distress; permanent disfigurement and disability; past, present, and future medical and drug expenses; the hardship of recovering from those injuries; and a significantly increased risk of death or further illness and injury.

93.    The spouses of the Plaintiffs and putative class members have suffered a loss of consortium, loss of society, services, companionship, and economic loss.

WHEREFORE, each Plaintiffs respectfully requests this Court enter judgment in his or her favor and against the Defendants for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for equitable relief and

restitution; for attorneys' fees, expenses, and costs herein incurred; for interest accrued

from the date of filing; for such other and further relief as this Court deems just and

proper; and demands that the issues herein contained be tried by a jury.

## COUNT VI
## FRAUD

94.    The Plaintiffs and putative class members hereby incorporate by reference,

as if fully set forth herein, each and every count, paragraph, and allegation of this

Complaint.

95.    The Defendants directly and indirectly, made material misrepresentations,

or failed to disclose material facts, to the Plaintiffs and putative class members and their

physicians concerning problems with the Guidant Defibrillators/Pacemakers, and

specifically with short-circuits while charging to deliver necessary shocks.

96.    These material misrepresentations and omissions were made by

Defendants to the Plaintiffs and putative class members and to the Plaintiffs and putative

class members' physicians both before and after the Plaintiffs and putative class members

were implanted – and, where applicable, re-implanted – with Guidant devices.

97.    The Defendants through their experience, were in a position of superiority

over the Plaintiffs and putative class members, and even over the Plaintiffs and putative

class members' physicians, with respect to knowledge and information concerning the

tendency of Guidant Defibrillators/Pacemakers to short-circuit or otherwise fail, and the

incidence of such failures and malfunctions.

98.    The Defendants had a duty to disclose these facts to the Plaintiffs and

putative class members, but failed to do so.

99.    The material misrepresentations and omissions were, or should, have been

known by Defendants to be false when made.

100.    The Defendants intended, or could reasonably have foreseen or expected, that these material misrepresentations and omissions would influence the Plaintiffs and putative class members and their implanting physicians in their decisions to implant Guidant Defibrillators/Pacemakers.

101.    The Plaintiffs and putative class members and their physicians in fact relied, to the Plaintiffs and putative class members' detriment and injury, upon the false statements of fact and material omissions made by the Defendants, reasonably and justifiably, and were the beneficiary of all express warranties attached to such goods.

102.    As a direct and proximate cause of defendant's conduct, the Plaintiffs and putative class members have suffered and will continue to suffer from sever injuries, as set forth above.

103.    The Plaintiffs and putative class members have suffered and will suffer severe injuries described above, for which the Defendants are liable. As a proximate result of the actionable wrongful conduct of the Defendants, the Plaintiffs and putative class members have suffered damages. Specifically, as a result of having Guidant's defective Defibrillators/Pacemakers implanted, explanted, and/or exchanged and re-implanted, the Plaintiffs and putative class members have suffered and will continue to suffer severe physical illness and injuries; past, present, and future pain and suffering; past, present, and future mental anguish and emotional distress; permanent disfigurement and disability; past, present, and future medical and drug expenses; the hardship of recovering from those injuries; and a significantly increased risk of death or further illness and injury.

104.    The spouses of the Plaintiffs and putative class members have suffered a loss of consortium, loss of society, services, companionship, and economic loss.

WHEREFORE, each Plaintiff respectfully requests this Court enter judgment in his or her favor and against the Defendants for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for equitable relief and restitution; for attorneys' fees, expenses, and costs herein incurred; for interest accrued from the date of filing; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## COUNT VII
## FRAUD BY CONCEALMENT

105.    The Plaintiffs and putative class members hereby incorporate by reference, as if fully set forth herein, each and every count, paragraph, and allegation of this Complaint.

106.    At all times relevant to this action, the Defendants had the duty and obligation to disclose to the Plaintiffs and putative class members and to their physicians, the true facts concerning the Guidant Defibrillators/Pacemakers, specifically that said product was dangerous and defective and how likely it was to cause serious injuries and/or death.

107.    The Defendants made affirmative representations as set forth herein to the Plaintiffs and putative class members, their physicians, and the general public, while concealing the following material facts:

a.    That the implanted Guidant Defibrillators/Pacemakers were defective, such that the affected Guidant Devices would short circuit and fail to function as intended;

b.    That the Defendants knew of numerous failures of the Guidant
Defibrillators/Pacemakers, yet failed to disclose such knowledge.

c.    That the Defendants had altered the design of similar devices and had
failed to disclose such alterations, thus foreclosing the opportunity to
inquire as to changes in the implanted Defibrillator;

d.    That the Defendants had altered the design of the implanted
Defibrillators/Pacemakers following implantation in the Plaintiffs and
putative class members;

e.    That the affected Guidant Defibrillators/Pacemakers were inherently
dangerous; and

f.    That the explanted Guidant device, where applicable, would be provided
immediately to Guidant for "evaluation."

108.    At all times relevant to this action, the Defendants had the duty and
obligation to disclose the foregoing facts concerning the Guidant
Defibrillators/Pacemakers to the Plaintiffs and putative class members and to their
physicians.

109.    At all times relevant to this action, the Defendants intentionally, willfully,
and maliciously concealed or suppressed the facts set forth herein from the Plaintiffs and
putative class members and from the Plaintiffs and putative class members' physicians,
with the intent to defraud as herein alleged.

110.    At all times herein mentioned, neither the Plaintiffs and putative class
members nor their physicians were aware of the facts set forth above, and had they been

aware of said facts, they would not have acted as they did, that is, they would not have utilized the product.

111.   As a result of the concealment or suppression of the facts set forth above, the Plaintiffs and putative class members suffered injuries as set forth herein.

112.   By committing the actions and omissions herein alleged, the Defendants acted with oppression, fraud, and malice, and the Plaintiffs and putative class members are therefore entitled to punitive damages in an amount reasonably related to the Plaintiffs and putative class members' actual damages, and to the Defendants' wealth, and in an amount sufficiently large to be an example to others, and to punish and deter the Defendants and others like the Defendants from engaging in similar conduct in the future.

113.   That at all times relevant to this action, the Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth herein from the Plaintiffs and putative class members and from the Plaintiffs and putative class members' physicians, with the intent to defraud the Plaintiffs and putative class members as herein alleged.

114.   At all times herein mentioned, neither the Plaintiffs and putative class members nor their physicians were aware, nor in the exercise of reasonable and/or ordinary care or diligence did they know or would they have known, of the facts set forth herein, and had they been aware of the facts misrepresented and/or concealed by the Defendants, they would not have acted as they did; that is, the Plaintiffs and putative class members' physicians would not implanted Guidant Defibrillators/Pacemakers in the

27

Plaintiffs and putative class members, and the Plaintiffs and putative class members would not have Guidant Defibrillators/Pacemakers implanted in them.

115.    As a result of the concealment or suppression of the facts set forth above, the Plaintiffs and putative class members suffered injuries and damages as set forth herein.

116.    In committing the actions herein alleged, the Defendants acted with oppression, fraud, and malice, and the Plaintiffs and putative class members are therefore entitled to punitive damages in an amount reasonably related to the Plaintiffs and putative class members' actual damages, and to the Defendant's wealth, and in an amount sufficiently large to be an example to others, and to punish and deter the Defendants and others like the Defendants from engaging in similar conduct in the future.

117.    The Plaintiffs and putative class members have suffered and will suffer severe injuries described above, for which the Defendants are liable. As a proximate result of the actionable wrongful conduct of the Defendants the Plaintiffs and putative class members have suffered damages. Specifically, as a result of having Guidant's defective Defibrillators/Pacemakers implanted, explanted, and/or exchanged and re-implanted, the Plaintiffs and putative class members have suffered and will continue to suffer severe physical illness and injuries; past, present, and future pain and suffering; past, present, and future mental anguish and emotional distress; permanent disfigurement and disability; past, present, and future medical and drug expenses; the hardship of recovering from those injuries; and a significantly increased risk of death or further illness and injury.

118.    The spouses of the Plaintiffs and putative class members have suffered a loss of consortium, loss of society, services, companionship, and economic loss.

WHEREFORE, each Plaintiff respectfully requests this Court enter judgment in his or her favor and against the Defendants for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for equitable relief and restitution; for attorneys' fees, expenses, and costs herein incurred; for interest accrued from the date of filing; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

**COUNT VIII**
**UNJUST ENRICHMENT AS TO DEFENDANTS**

119.    The Plaintiffs and putative class members incorporate by reference all preceding paragraphs as if fully set forth herein, and further allege as follows:

120.    As a direct, proximate, and foreseeable result of the Defendants' acts and otherwise wrongful conduct, the Plaintiffs and putative class members were gravely harmed.  The Defendants profited and benefited from the sale of the medical devices described herein, even as they injured the Plaintiffs and putative class members.

121.    The Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including the Plaintiffs and putative class members, with full knowledge and awareness that, as a result of the Defendants' unconscionable and intentional wrongdoing, consumers, including the Plaintiffs and putative class members, were not receiving products of the quality, nature, fitness, or value that had been represented by the Defendants or that reasonable consumers expected.  The Plaintiffs and putative class members purchased medical devices that they expected

would improve their health, and instead found their health adversely affected, impaired, and/or destroyed by those devices.

122.    By virtue of the conscious wrongdoing alleged in this Complaint, the Defendants have been unjustly enriched at the expense of the Plaintiffs and putative class members, who are entitled to equitable relief and restitution, and who hereby seek the disgorgement and restitution of the Defendants' wrongful profits, revenue, and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy the Defendant's unjust enrichment.

WHEREFORE, each Plaintiff respectfully requests this Court enter judgment in his or her favor and against the Defendants for compensatory and punitive damages in a sum in excess of the jurisdictional requirement of this Court; for equitable relief and restitution; for attorneys' fees, expenses, and costs herein incurred; for interest accrued from the date of filing; for such other and further relief as this Court deems just and proper; and demands that the issues herein contained be tried by a jury.

## DAMAGES

123.    Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants'[ conduct and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiffs have suffered and incurred, in the past and in the future, not only from a financial standpoint, but also in terms of good faith, freedom from pain and worry.

124.    At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the

public health and safety in conscious disregard of the foreseeable harm caused by these product. Defendants' conduct exhibits such a entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence, or willful or intentional disregard each of the Plaintiff's individual rights. The Plaintiffs, therefore, is entitled to punitive damages from the Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover damages as set forth above from Defendants, including costs of Court, pre-judgment and post-judgment interest at the legal rates; and that Plaintiffs be granted such other and further relief, both general and special, at law and in equity, to which the Plaintiffs are justly entitled under the facts and attending circumstances.

### DEMAND FOR JURY TRIAL

The Plaintiffs and putative class members demand a trial by struck jury.

Kathryn S. Harrington(ASB-7984-M73K)
Attorney for Plaintiffs
Bar Code No.: SUM002

**OF COUNSEL**:
Hollis & Wright P.C.
Financial Center
505 North 20th Street, Suite 1500
Birmingham, Alabama 35203
(205) 324-3600

31

## REQUEST FOR CERTIFIED MAIL SERVICE BY CLERK

Attorney for Plaintiffs hereby requests that the clerk serve the following defendants by certified mail, return receipt requested.

_Kathryn S Harrington_
OF COUNSEL

PLEASE SERVE THE FOLLOWING DEFENDANT VIA CERTIFIED MAIL:

Guidant Corporation
c/o CSC Lawyers Incorporating SVC, Inc.
150 South Perry Street
Montgomery, Alabama 36104

Guidant Sales Corporation
c/o CSC Lawyers Incorporating SVC, Inc.
150 South Perry Street
Montgomery, Alabama 36104

**EXHIBIT A**

LEAD PLAINTIFF: ERNEST REED

2.Jimmy Adair
3.Freddie Bowdry
4. Martha Bray
5. Cynthia Brooks
6. William Buckner
7.Ozella Clark
8. Carolyn Cunningham
9. Sammie Floyd
10. Willie Ford
11. Virginia Garver
12. Anna Green
13. Price Harper
14. Rozell Harris
15. Sharon Hatfield
16. William Howard
17. Willie James
18. Lucius Lawson
19. Bertha Lyas
20.Dennis Marchman
21. Freddie Mickell
22. Louis Mosby
23. Brenda Pasquale
24. Robert Roman
25. Charles Sikes Jr.
26. James "Jim" Stephens
27. Kevin Strickland
28. Ernest Tucker
29. Florence Tuesno
30.Gaylon Wise
31. Robert Womack
32. Donnie Luallen
33. Carolyn Argo
34. Georgia Wells
35. Connie Dillard
36. Mary Jackson
37. Earnestine Taswell
38. Elvin Fedrick
39. Steven Turner
40. Otis Gibson
41. Mary Brooks
42. Alene Dodd
43. Herman Stringer